# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BARBARA A. JYACHOSKY,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**DONALD C. WINTER,**<br><br>        **Defendant.** | **Civil Action 04-01733(HHK)**<br>**04-01734 (HHK)**<br>**05-00239 (HHK)**<br>**05-00271 (HHK)**<br>**05-02251** (HHK) |

## MEMORANDUM OPINION AND ORDER

In five actions before this court, Barbara Jyachosky, a woman of Eastern-European decent and who is over the age of forty, sets forth causes of action against the Department of the Navy, her former employer, alleging that during her employment with the Navy she endured discrimination on the basis of her national origin, gender, and age and retaliation for engaging in protected activity in violation of  Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.,* and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et. seq*.

Pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), the Navy[1] moves to dismiss or transfer venue in two of the actions (#26/27 in 04-cv-1733 and #25/26 in 04-cv-1734), and to transfer venue in three others (#13/14 in 05-cv-239, #14/15 in 05-cv-271, and #4 in 05-cv-2251).  Upon consideration of the motions, the oppositions thereto, and the record of this case, the court concludes that the Navy's motions to transfer must be granted.

---

[1] When this suit was filed, the named defendant, was Gordon England, who was sued in his official capacity only as Secretary of the Navy.  On January 3, 2006, Donald C. Winter was confirmed as the new Secretary of the Navy and replaced Mr. England.  Mr. Winter is therefore substituted as the party defendant in this case pursuant to Fed. R. Civ. P. 25(d)(1).

# I.  BACKGROUND

Jyachosky was employed by the Naval Sea Systems Command ("NAVSEA") from June 19, 1969, to August 3, 2004.  Jyachosky asserts that, beginning in 1991 and continuing until her retirement in 2004, she was the victim of various forms of employment discrimination.  Each of Jyachosky's complaints address a different period of time during which these acts of discrimination are alleged to have occurred: 04-cv-1733 ("Complaint 1") pertains to acts that occurred from 1991 to 1997; 04-cv-1734 ("Complaint 2") pertains to acts that occurred from 1997 to 2000; 05-cv-0239 ("Complaint 3") pertains to acts that occurred from 2000 to 2004; 05-cv-0271 ("Complaint 4") pertains to acts that occurred from 2002 to 2003; and 05-cv-2251 ("Complaint 5") pertains to acts that occurred from 2002 to 2004.

Each of the aforementioned complaints was filed here.  The Navy now moves to dismiss or transfer venue to the Eastern District of Virginia with respect to Complaints 1 and 2, and to transfer venue with respect to Complaints 3, 4, and 5.

# II.  ANALYSIS

## A.  Complaints 1 and 2

As with all of Jyachosky's complaints, Complaints 1 and 2 assert claims under both Title VII and the ADEA.  Jyachosky's Title VII claims, however, are the focus of the Navy's motions to dismiss or to transfer venue.

When a case is filed in the wrong federal judicial district, the district court in which the action is filed will either dismiss it or transfer it to a district in which the action could have been brought.  28 U.S.C. § 1406(a).  In considering a motion to dismiss for lack of venue, unless contradicted by an evidentiary showing "the court accepts the plaintiff's well-pled factual

allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Darby v. United States Dep't of Energy*, 231 F. Supp. 2d 274, 276–77 (D.D.C. 2002) (citing *Fifth St. Assocs. v. U-Haul Int'l, Inc.*, 148 F. Supp. 2d 50, 54 (D.D.C. 2001)).  To prevail on her motion to dismiss, a defendant must present facts to defeat a plaintiff's assertion of venue.  *Fifth St. Assocs.* 148 F. Supp. 2d at 54 (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352 (2d ed.1990)).

The appropriate standard for determining venue in Title VII cases is not the general venue statute, 28 U.S.C. § 1391, but rather the venue provision contained in 42 U.S.C. § 2000e-5(f)(3). *Stebbins v. State Farm Mut. Auto. Ins. Co.*, 413 F.2d 1100, 1102 (D.C. Cir. 1969) (per curiam); *accord Quarles v. Gen. Inv. & Dev. Co.*, 260 F. Supp. 2d 1, 8 (D.D.C. 2003); *Darby*, 231 F. Supp. 2d at 277.  Title VII's venue provision provides in relevant part:

> [A Title VII] action may be brought in [1] any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, [4] but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3).  In the instant case, the Navy argues that none of the venue provisions set forth in § 2000e-5(f)(3) allow for venue in the District of Columbia.  The Navy is correct.

The court takes judicial notice of the fact that, although NAVSEA is currently headquartered in the Washington Navy Yard, Washington, D.C., prior to July 2001 NAVSEA was located in Arlington, Virginia.  Because Complaints 1 and 2 are based on actions that took

place between 1991 and 1999, the events underlying Jyachosky's Title VII claims in these

complaints all arose in Arlington, Virginia.  Accordingly, the first provision of § 2000e-5(f)(3)

cannot provide a basis for venue in the District of Columbia for these complaints.

Turning next to the second provision of § 2000e-5(f)(3), the court must determine the

locus of the relevant employment records.  Jyachosky argues that these records are located at the

Washington Navy Yard.  According to Jyachosky, the records at issue have been retained by

numerous individuals employed at the Washington Navy Yard, among them the Navy's attorney,

Nanette Oppenheimer; the Personnel Officer, Program Executive Officer for Ships; the

Administrative Office for the Commander, NAVSEA; and the NAVSEA Comptroller for

personnel.  The Navy, however, insists that the pertinent employment records are "maintained

and administered" in St. Louis, Missouri.  The Navy has provided evidence that upon

Jyachosky's retirement, her employment records—including her Official Personnel Folder—

were moved to St. Louis for storage.  Def.'s Ex. 2 at ¶¶ 2–4 (Godfrey Decl.).

Jyachosky concedes that, at a minimum, her "official notices of hiring among federal

agencies, promotions, within-grade increases, and award and training certificates" are located in

St. Louis.  Pl.'s Opp'n at 6.  She speculates, however, that duplicates of some of these records are

maintained by the Navy's attorney assigned to this matter and the administrative personnel

mentioned above.  Speculation, however, is not sufficient to carry Jyachosky's burden of

demonstrating proper venue in the face of the affidavit proffered by the Navy.  *See Pierce v.

Shorty Small's of Branson, Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998) (finding that the plaintiff

failed to establish that venue was proper when the defendant's affidavit controverted the

plaintiff's unsupported assertions); *Pinson v. Rumsfeld*, 2006 WL 1374473, at *5 (11th Cir. May

4

18, 2006) ("[The Plaintiff] did not introduce any evidence demonstrating, and thus, did not meet

his burden to establish, that the Northern District of Georgia was the location where his

personnel records were maintained by an official custodian . . . .").

Even assuming they exist, these duplicate documents are insufficient to satisfy Title VII's

second venue provision. *See Washington v. Gen. Elec. Corp.*, 686 F. Supp. 361, 363 (D.D.C.

1988) (rejecting the argument that venue existed in Washington, D.C., because a copy of the

plaintiff's employment records were located in the district, and holding that "Congress intended

venue to lie on the basis of the presence of records only in the one judicial district in which the

complete, 'master' set of employment records is 'maintained and administered.'").  In addition,

the only category of documents that Jyachosis asserts exist in Washington, D.C., but not St.

Louis, are "time and attendance" records.  The relevance of these documents to the employment

practice of which Jyachosky complains is not apparent, and accordingly, it is unclear how the

existence of these documents advances Jyachosky's argument that venue is appropriate in the

District of Columbia.  *See Middlebrooks v. England*, 2005 WL 3213956, at *3 (D.D.C. Nov. 2,

2005) (finding documents related to an employee's "employment generally" were not "relevant

employment records" within the meaning of § 2000e-5(f)(3)); *Amirmokri v. Abraham*, 217 F.

Supp. 2d 88, 90–91 (D.D.C. 2002) ("While it may be true that records relating to plaintiff's

unlawful employment practice complaint and the investigation thereof are maintained in the

District of Columbia, such records are not 'employment records' within the meaning of the

statute."). As such, the second provision of § 2000e-5(f)(3) only provides for venue in St. Louis, Missouri.[2]

Having found that the first and second provisions of § 2000e-5(f)(3) fail to support venue in this district, the court need only address briefly the third and fourth provisions. With respect to the third provision, Jyachosky does not argue that she would have worked in Washington, D.C. but for the Navy's allegedly discriminatory action. As for the fourth provision, it only applies if a defendant cannot be found within any of the other districts covered by the statute. In this instance, because the Secretary of the Navy has continuously maintained his headquarters at the Pentagon, in Arlington, Virginia, Def.'s Reply, Ex. 2 at ¶ 1 (Oppenheimer Decl.), and Arlington, Virginia was the location of the allegedly discriminatory practices that form the basis for Jyachosky's Complaints 1 and 2, any argument that the fourth prong establishes venue is unavailing. As a result, the court holds that the Title VII claims set forth in Jyachosky's Complaints 1 and 2 may not be properly maintained in the District of Columbia.

---

[2] In *Saran v. Harvey*, 2005 WL 1106347 (D.D.C. May 9, 2005), the court rejected the proposition that the second provision of § 2000e-5(f)(3) permitted for venue in St. Louis, Missouri, when the plaintiff's records *may* have been archived there. Unlike here, however, the defendant was uncertain that St. Louis was the location of the plaintiff's employment records. The court in *Saran* also held, citing no authority, that the records were not "maintained and administered" in St. Louis given that the plaintiff's employment records were located in Europe at the time of the alleged discriminatory conduct. *Id.* at *4. As to this component of the decision, the court respectfully disagrees that the second provision of § 2000e-5(f)(3) should be read in the past-tense. The plain language of the statute states clearly that venue will lie "in the judicial district in which the employment records relevant to such practice *are* maintained and administered." 42 U.S.C. § 2000e-5(f)(3) (emphasis added). There is no indication that Congress intended this provision to be read more broadly, therefore the court declines to do so.

Jyachosky's Complaints 1 and 2 are not limited, however, to claims under Title VII. Jyachosky also alleges violations of the ADEA.  Venue for ADEA claims is determined by the general venue statute, specifically, 28 U.S.C. § 1391(e), which states:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or substantial part of the property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e).

The Navy initially conceded that venue existed in the District of Columbia for Jyachosky's ADEA claims, but later reversed its position arguing that venue lies exclusively in the Eastern District of Virginia.  According to the Navy,  the District of Columbia is not a proper venue because the Secretary of the Navy resides in Virginia, the activity which gives rise to Jyachosky's claim took place in Virginia, and Jyachosky's residence is located in Virginia. While the Navy's eleventh-hour change in its position raises equitable concerns as it denied Jyachosky an opportunity to brief this aspect of the venue analysis, the issue is moot because the court concludes that the District of Columbia is a proper venue for Jyachosky's ADEA claims. "Officers and agencies of the United States can have more than one residence, and venue can properly lie in more than one jurisdiction.  When an officer or agency head performs a 'significant amount' of his or her official duties in the District of Columbia, the District of Columbia is a proper place for venue." *Bartman v. Cheney*, 827 F. Supp. 1, 1 (D.D.C. 1993) (holding that the Secretary of Defense resides in Washington, D.C. for purposes of § 1391(e)); *see also Benton v. England*, 222 F. Supp. 2d 728, 731 (D. Md. 2002) (finding the Secretary of the

Navy resides in Washington, D.C.); *Smith v. Dalton*, 927 F. Supp. 1, 5–6 (D.D.C. 1996) (holding

that the Secretary of the Navy could be sued in his official capacity in either the Eastern District

of Virginia, where the Pentagon is located, or the District of Columbia).

Nevertheless, it is also clear that venue for Jyachosky's ADEA claims—like her Title VII

claims—exists in the Eastern District of Virginia under the second and third provisions of §

1391(e).  According to § 1406(a), when a case is filed in an improper venue, the district court

where the case is filed may dismiss it or "in the interest of justice," transfer the case to any

district in which it could have been brought.  28 U.S.C. § 1406(a).  Because the Eastern District

of Virginia is the only district where Jyachosky's Title VII claims and ADEA claims may be

simultaneously prosecuted, the court finds that the interests of justice requires that Complaints 1

and 2 be transferred to the Eastern District of Virginia.[3]  *See, e.g., Saran v. Harvey*, 2005 WL

1106347, at *4 (D.D.C. May 9, 2005) ("When venue is improper for a Title VII claim, courts

have consistently transferred the entire case, pursuant to 28 U.S.C. § 1406(a), to a judicial district

where venue is appropriate for all claims, rather than split a case apart.").

---

[3] Jyachosky argues that the court should exercise its discretion and find pendent venue over her Title VII claims given the existence of venue for her ADEA claims.  Where, as here, Congress has clearly limited the scope of venue, the court is compelled to abide by such restrictions.  *Bartel v. Fed. Aviation Admin.*, 617 F. Supp. 190, n.33 (D.D.C. 1985) ("In enacting the special Title VII venue statute Congress deliberately sought to limit the venues in which Title VII actions might be brought.  Under such circumstances, the court lacks the authority to ignore the congressional intent to limit venue by finding pendent venue.") (citations omitted); *Lee v. England*, 2004 WL 764441, at *1 (D.D.C. Mar. 9, 2004) ("Venue in a Title VII case is governed-strictly . . . by 42 U.S.C. § 2000e-5(f)(3)").  As such, the court refuses to exercise pendent jurisdiction.

**B.  Complaints 3, 4, & 5**

Complaints 3, 4, and 5 are similar in many respects to Complaints 1 and 2.  For example, each complaint includes a description of the events included within Complaints 1 and 2, presumably in an attempt to provide context to the allegations in these later complaints.  The alleged acts that form the basis of each of the claims in Complaints 3, 4, and 5, however, all occurred following NAVSEA's relocation to the Washington Naval Yard.  Accordingly, the Navy concedes that, pursuant to § 2000e-5(f)(3), venue for these complaints properly lies in this district.  42 U.S.C. § 2000e-5(f)(3) ("[A Title VII] action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed.").  Despite this concession, the Navy moves to transfer Complaints 3, 4, and 5 to the Eastern District of Virginia.

Under 28 U.S.C. § 1404(a), the moving defendant "bears the burden of demonstrating that transfer . . . is warranted."  *Gemological Inst. of Am., Inc. v. Thi-Dai Phan*, 145 F. Supp. 2d 68, 71 (D.D.C. 2001).  Section 1404(a) provides further that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division *where it might have been brought*."  28 U.S.C. § 1404(a) (emphasis added).

In this case, the Navy has established that, in addition to the District of Columbia, venue properly exists in the Eastern District of Virginia.  Section 2000e-5(f)(3) states explicitly that "[f]or purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought."  42 U.S.C. § 2000e-5(f)(3).  Thus, because the Secretary of the Navy's principal office is located at the Pentagon in Arlington, Virginia, the court concludes that—for

purposes of the Navy's motion to transfer—Jyachosky's Title VII claims could have been brought in the Eastern District of Virginia.  Similarly, Jyachosky's ADEA claims could also have been brought in the Eastern District of Virginia as it is a district in which the defendant "resides." 28 U.S.C. § 1391(e).

Having answered this threshold question, the court must next determine whether "the interest of justice" require that Complaints 3, 4, and 5 be transferred from this district.  In making this assessment, the court will "balance a number of case-specific factors which include the private interests of the parties as well as public interests such as efficiency and fairness." *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).  The private interest factors include:  (1) the plaintiff's choice of forum, (2) the defendant's choice of forum, (3) whether the claim arose elsewhere, (4) the convenience of the parties, (5) the convenience of the witnesses, but only to the extent that the witnesses may be unavailable for trial in one of the districts, and (6) the ease of access to sources of proof.  *Id.*  The public interest factors include:  (1) the transferee district's familiarity with the governing law, (2) the relative congestion of both the transferor and transferee courts, and (3) the local interest in deciding local controversies at home.  *Id.*

Examination of these factors demonstrates that transfer of Jyachosky's Complaints 3, 4, and 5 is warranted.  Both parties acknowledge that the distance between the courthouse for the Eastern District of Virginia and the courthouse for the District of the District of Columbia is minimal.  Accordingly, many of the above cited private factors have little impact on the court's analysis.  Given the close proximity of the two possible venues, the convenience of the parties,

the convenience of witnesses, and the ease of access to sources of proof are not significant considerations.

The court recognizes that a certain degree of deference should be accorded to the plaintiff's choice of forum, *Air Line Pilots Ass'n v. Eastern Air Lines*, 672 F. Supp. 525, 526 (D.D.C. 1987), however, the court "need give substantially less deference when the forum preferred by the plaintiff is not his home forum." *Boers v. United States*, 133 F. Supp. 2d 64, 65 (D.D.C. 2001) (citing *Piper Aircraft v. Reyno*, 454 U.S. 235, 255–56 (1981)). In her most recently filed complaint Jyachosky indicates that she is a resident of Arlington, Virginia, therefore any presumption of convenience with respect to litigating Complaints 3, 4, and 5 in the District of Columbia loses much of its force.

The public interest factors do not militate strongly for or against transfer. Both districts are equally familiar with the law governing Title VII and the ADEA, and the court is unaware of any significant difference in the relative congestion of the two district's respective dockets. While the majority of the alleged conduct that gives rise to the causes of action in Complaints 3, 4, and 5 arose in the Washington Naval Yard—presumably creating an interest in litigating these matters in the District of Columbia—this conduct is closely related to the activity underlying the claims in Complaints 1 and 2.

Here, the most dispositive consideration is efficiency and the preservation of judicial resources. Because Complaints 1 and 2 may not be brought in the District of Columbia but are nonetheless closely related to Complaints 3, 4, and 5, it would make little sense to allow Complaints 3, 4, and 5 to remain on this court's docket. As the Supreme Court has stated, to "permit a situation in which two cases involving precisely the same issues are simultaneously

pending in different District Courts leads to wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960). Jyachosky herself has expressed concern over the potential cost of litigation, and forcing plaintiff to simultaneously prosecute claims in two different courts would only exacerbate the economic hardships already imposed by the pursuit of a large number of cases.

As a result, the court holds that, consistent with the interest of justice, Complaints 3, 4, and 5 should be transferred to the Eastern District of Virginia.

### III.  CONCLUSION

For the aforementioned reasons Navy's motions to dismiss cases 04-cv-1733 and 04-cv-1734 are **DENIED** and the Navy's motions to transfer cases 04-cv-1733, 04-cv-1734, 05-cv-239, 05-cv-271, and 05-cv-2251 are **GRANTED**.  An appropriate order accompanies this memorandum.

Henry H. Kennedy, Jr.
United States District Judge

Dated: June 29, 2006